UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL F.,[1] | ) |
|               Plaintiff, | ) No. 21 CV 4399 |
| v. | ) Magistrate Judge Young B. Kim |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | ) |
|               Defendant. | ) August 5, 2024 |

**MEMORANDUM OPINION and ORDER**

Michael F. seeks disability insurance benefits ("DIB") asserting that he is disabled by neurocognitive disorder, mild dementia, substance abuse disorder, anxiety, depression, bipolar disorder, stroke, sleep apnea, and obesity. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Michael's remand request is granted:

**Procedural History**

Michael filed a DIB application in April 2019 claiming a disability onset date of March 9, 2018. (Administrative Record ("A.R.") 16.) After his application was denied initially and upon reconsideration at the administrative level, (id. at 88-99, 101-13), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 99-123). Michael appeared with his attorney at a November 2020

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Michael's first name and last initial in this opinion to protect his privacy to the extent possible.

hearing, at which he and a vocational expert testified. (Id. at 54-87.) The ALJ ruled the following month that Michael is not disabled. (Id. at 16-31.) The Appeals Council denied Michael's request for review, (id. at 1-7), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Michael filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Michael argues that the ALJ erred by: (1) improperly evaluating treating neurologist Dr. James Castle's opinions; (2) failing to incorporate into Michael's residual functional capacity ("RFC") a limitation to "simple 1 and 2 step directions in the work setting"; and (3) not supporting the symptom analysis with substantial evidence. (R. 16, Pl.'s Mem. at 2.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's

"analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review.'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024). To warrant reversal, a claimant must do more than "nitpick the ALJ's order." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Indeed, a claimant "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record." *Id.* Having considered the arguments and record under this standard, the court finds remand is warranted here because the ALJ failed to support her analysis with substantial evidence.

**A.     Opinion Evidence**

The court begins with Michael's argument that the ALJ erred by rejecting the opinions of his treating neurologist, Dr. Castle, (R. 16, Pl.'s Mem. at 8-12), because any error in this regard would require a reassessment of the RFC. The ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires the ALJ to consider the objective medical

evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may, but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

Dr. Castle treated Michael in 2019 and 2020 and diagnosed him with "[c]ognitive and behavioral changes due to thalamic strokes" based in part on a review of a March 2018 MRI. (A.R. 664; see also id. at 675 (indicating Michael suffers from "bilateral thalamic strokes with very bad behavioral changes and cognitive issues, [including] dementia" and prescribing Xanax and Trazodone).) Based on September and October 2019 examinations, Dr. Castle opined on October 23, 2019, that Michael suffered an "[i]schemic stroke to [his] bilateral thalamus" and described his prognosis as "poor" given his memory difficulties, confusion, emotional lability, personality change, difficulty solving problems, speech and communication difficulties, and problems with judgment and logical reasoning. (Id. at 683, 689-99.) Dr. Castle further opined that given Michael's symptoms, he would miss four or more workdays per month and be "completely unable to work due to cognitive and behavioral problems" related to his stroke. (Id. at 685.) A month later, on November 21, 2019,

4

Dr. Castle opined again that Michael would be unable to work because he "suffered from a major stroke" and "dementia." (Id. at 687.)

Dr. Castle issued another opinion on January 13, 2020, stating that Michael "suffers from vascular dementia with cognitive and behavioral changes as a result of a thalamic stroke suffered in March 2018, seen on MRI scanning" and resulting in "irreversible" damage. (Id. at 705, 709.) He added that "[i]n addition to having mild dementia from a cognitive perspective, [Michael's] behavior can fluctuate and he can be impulsive and highly irritable." (Id. at 706; see also id. at 707 (noting Michael's "mood swings with inappropriate swearing and impulse control").) As a result, Dr. Castle opined that "roughly 50% of [Michael's] interpersonal interactions would be considered very inappropriate [given his] anger, impulsiveness, cursing, etc." and Michael would miss two or more workdays per month and not be able to respond to usual work situations or deal with changes in a routine work setting. (Id. at 706-07; see also id. at 709 (noting Michael was hospitalized in December 2019 because of "severe psychiatric issues"), 710 (noting Michael "struggles with motivation").) Dr. Castle concluded that Michael would be "completely unable to have a job" because of these limitations. (Id. at 706 (indicating that "anyone who spends 10 minutes with [Michael] would understand" that he is "100% medically speaking" unable to work).) Dr. Castle's treatment notes from the same date record psychiatric symptoms of "[a]nxiety, insomnia, and highly sarcastic behavior" and indicate he "[n]eeds a daytime caregiver to help him with his [activities of daily living]." (Id. at 708, 712-13 (noting Michael "has been leaving stoves on and water running when he is not

5

supervised").) Nevertheless, Dr. Castle recorded that Michael was "awake, alert, [and] had] no dysarthria or aphasia" but struggled on an assessment measuring attention, orientation, and memory and reported taking more than his prescribed dose of Xanax. (Id. at 715 (noting test score of "24 missing 4 on recall and 2 on orientation" and Michael's report of "extreme belligeren[ce]" after taking too much Xanax); but see id. at 22 (acknowledging Michael's wife's testimony that he took more Xanax than prescribed because of memory issues).)

The ALJ found that Dr. Castle's opinions were not persuasive because they were "not fully consistent with the neurological testing reported" by Dr. Peter Dodzik, a psychologist who performed neuropsychological testing in March 2019. (Id. at 26-27, 305-10.) In so finding, the ALJ relied on Dr. Dodzik's conclusions that Michael had "average IQ scores" and impulsivity and executive functioning skills "within normal limits." (Id. at 26.) The ALJ acknowledged, however, that Dr. Dodzik also found: "diminished" processing speed; difficulty with recall and cognitive efficiency; impaired story memory—falling at 1%—for both immediate and delayed recollection; and mild neurocognitive impairment secondary to multiple etiologies. (Id. at 26-27.)[2] The ALJ concluded that Dr. Dodzik's findings were "well supported and . . . consistent with the extensive objective testing." (Id. at 27.)

---

[2] Dr. Dodzik further noted Michael's history of anxiety, panic attacks, hyper gag-reflex and presentment at the evaluation as "overly paranoid and suspicious" and offered a "working diagnosis" of bipolar disorder. (A.R. 309.) Michael's treating psychiatrist later confirmed this diagnosis. (See id. at 106.)

The ALJ also considered the state agency psychologists' opinions at the initial and reconsideration levels and found these opinions "generally consistent" with record evidence and therefore "somewhat persuasive." (Id. at 27-28.) The ALJ explained that the state agency psychologist opined at the initial level that Michael "would have difficulty recalling and following complex directions but can still remember and follow simple 1 and 2 step directions." (Id. at 27 (citing id. at 97).) The state agency psychologist opined at the reconsideration phase that Michael "can understand and remember simple but not detailed or complex instructions" and "carry out simple tasks in a reasonably punctual fashion and consistent pace." (Id. (citing id. at 110).) The ALJ found these opinions "generally consistent" with each other, Dr. Dodzik's findings, and Michael's psychiatric and neurology records. (Id. at 28.) Nonetheless, the ALJ said she imposed greater limitations than those the consultants suggested because the record supported Michael's issues with mood dysregulation. (Id.; see also id. at 21-29 (acknowledging Michael's reports of "confusion, anxiety and suicidal ideation," third-party reports of "odd, aggressive, anxious behavior," and medical evidence assessing Michael with mood disorder and describing "ongoing memory issues and behavioral changes," including aggressive, sarcastic, fluctuating, and irritable behavior).)

The ALJ did not err by dismissing Dr. Castle's opinions that Michael would be completely unable to work. (See id. at 685, 687, 706, 792.) To be sure, "statements that [a claimant is or is not] able to work, or able to perform regular or continuing work" are "neither valuable nor persuasive" and require no explanation of how they

7

factored into the ALJ's ultimate findings. 20 C.F.R. § 404.1520b(c)(3)(1); *see Ellison v. Kijakazi*, No. 22-3134, 2023 WL 8794989, at *3 (7th Cir. Dec. 20, 2023) ("[A]n ALJ may discount medical opinions that are 'conclusory and not supported by any clinical basis.'" (quoting *Cooley v. Berryhill*, 738 Fed. Appx. 877, 880 (7th Cir. 2018)). The court agrees that these opinions reach conclusions reserved for the Commissioner and, as such, the ALJ was not required to "provide any analysis about how [she] considered such evidence." 20 C.F.R. § 404.1520b(c)(3)(1). Accordingly, there was no error here.

But the ALJ's evaluation of Dr. Castle's opinions as to Michael's struggles with recall, orientation, and attentiveness gives the court pause because the ALJ did not appear to consider the extent to which these opinions are consistent with the record as a whole, as Michael points out. (R. 16, Pl.'s Mem. at 6-7; see also A.R. 683, 689-99.) Indeed, the ALJ did not explain whether or to what extent she considered the consistency between Dr. Castle's findings relating to Michael's poor performance on recall and orientation assessments, (A.R. 715), Dr. Dodzik's findings that Michael suffered diminished processing speed, recall and cognitive efficiency, and story memory, (id. at 307-09), and the state agency psychologist's opinion at the initial level that Michael "would have difficulty recalling and following complex directions but can still remember and follow simple 1 and 2 step directions," (id. at 97; see also id. at 110 (opining at the reconsideration level that Michael can "understand and remember simple but not detailed or complex instructions")). Although consistency under the revised regulations requires an assessment of "how consistent an opinion

8

is with the entire record as a whole, not only with another opinion," *Gwendolyn P. v. Kijakazi*, No. 20 CV 3339, 2021 WL 5204858, at *9 (N.D. Ill. Nov. 9, 2021), here the ALJ found that Dr. Dodzik's and the consultants' opinions were "consistent with the extensive objective testing" and "generally consistent" with the record evidence, respectively, (A.R. 27-28). Given these findings, the ALJ should have explained why Dr. Castle's opinions endorsing similar deficits were "not generally persuasive." (A.R. 27.) By failing to confront the consistency of Dr. Castle's opinions—at least those pertaining to Michael's difficulty with recall, orientation, and attentiveness—with the entire record, the ALJ did not supply substantial evidence to support her decision.

Compounding this error, the ALJ then assigned Michael a mental RFC that limited him in part to "simple tasks in a routine work setting," (id. at 21), without explaining why she departed from the state agency psychologist's opinion rendered at the initial level that Michael could "remember and follow simple 1 and 2 step directions," (id. at 27-28). Under 20 C.F.R. § 404.1520c, the ALJ was required to consider and articulate the persuasiveness of all opinions, including those submitted at the initial level. Here, the ALJ failed to explain why she seemed to reject the consultant's opinion regarding "simple 1 and 2 step directions."[3] (A.R. 97.) Given

---

[3] The state agency psychologist at the reconsideration level opined that Michael could "understand and remember simple but not detailed or complex instructions" and "carry out simple tasks," but did not state that Michael was capable of "simple 1 and 2 step directions," as the psychologist at the initial level did. (Compare A.R. 110 with id. at 97.) Nevertheless, the ALJ found both opinions "generally consistent in nature" with each other and the record without explaining why she did not include a 1- to 2-step instruction limitation in Michael's RFC. (Id. at 28.)

9

this opinion, which the ALJ credited as "generally consistent" with the state agency psychologist's opinion at the reconsideration level and the record evidence, (id. at 28), Michael asserts that the ALJ should have limited him to work requiring no more than 1- to 2-step instructions, (R. 16, Pl.'s Mem. at 10-12). The government responds that such a limitation was not necessary here because neither consultant said Michael could only perform work with 2 or fewer steps. (R. 21, Govt.'s Resp. at 5.) But the trouble is that the ALJ did not share her reasoning in this regard, leaving no way for the court to trace the path she used to connect the evidence to her conclusion. Because there may be "a significant difference between one-to-two step tasks" and "simple work," which may require a higher level of reasoning, the court cannot say the ALJ's error here is harmless. *See Schlattman v. Colvin*, No. 12 CV 10422, 2014 WL 185009, at *7 (N.D. Ill. Jan. 14, 2014) ("[T]he Department of Labor's Dictionary of Occupational Titles ("DOT") defines a Reasoning Development Level of 1 as the ability to '[a]pply commonsense understanding to carry out simple one- or two-step instructions" and states that "a limitation to one- or two-step work restricts the person to a Level 1 Reasoning job under the DOT, whereas simple work may also include Reasoning Level 2 or higher."). Remand is therefore required so that the ALJ may reassess Michael's RFC, taking into consideration the consistency of Dr. Castle's opinions as to limitations relating to recall, orientation, and attentiveness with the record as a whole and the consultant's opinion that Michael can remember and follow simple, 1- to 2-step directions.

## B. Symptom Assessment

Michael next complains that the ALJ's evaluation of his subjective symptom statements lacks the support of substantial evidence. (R. 16, Pl.'s Mem. at 13-16.) An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

Michael first asserts that the ALJ did not sufficiently explain why she rejected some of his subjective symptom statements. (R. 16, Pl.'s Mem. at 13-14.) However, ALJs "are subject to only the most minimal of articulation requirements," *Warnell*, 97 F.4th at 1053, and the ALJ has met that minimal standard here. Although Michael contests the validity of the "not fully consistent" language used by the ALJ, (A.R. 28), the Seventh Circuit has rejected a similar argument where, as here, the ALJ "described (and applied) the correct standard" of determining whether the alleged "symptoms were substantiated by the objective medical evidence and other evidence in the record," *Harris v. Saul*, 835 Fed. Appx. 881, 886 (7th Cir. 2020); (see

11

also R. 21, Govt.'s Resp. at 14). And to the extent Michael argues that the ALJ did not consider his statements regarding limitations on his daily activities, (R. 16, Pl.'s Mem. at 13), the ALJ did so earlier in her decision, (A.R. 19-20). The court thus finds nothing patently wrong with these aspects of the ALJ's symptom assessment.

## Conclusion

For the foregoing reasons, Michael's request for remand is granted. This matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate**